# Clement & Murphy
PLLC

February 17, 2025

**Via CM/ECF**

Christopher M. Wolpert
Clerk of Court
U.S. Court of Appeals for the Tenth Circuit
The Byron White U.S. Courthouse
1823 Stout Street
Denver, CO 80257

      Re:    *Ortega v. Grisham*, No. 24-2121

Dear Mr. Wolpert:

      Plaintiffs-Appellants respectfully notify the Court of a recent decision, *Beckwith v. Frey*, No. 1:24-cv-384 (D. Me. Feb. 13, 2025) (Dkt.30), attached hereto.

      *Beckwith* holds that a Maine law imposing a "cooling-off" period for firearms purchases—like HB129—violates the Second Amendment. Paralleling New Mexico's arguments, Maine tried to defend its 72-hour cooling-off period by arguing that the Second Amendment's text does not protect acquiring firearms, that its law imposes a condition or qualification on the commercial sale of guns, and that cooling-off periods align with historical prohibitions on carrying firearms while intoxicated, licensing regimes, and laws "bann[ing] certain minorities from owning firearms out of a fear of what they might do." Ex.13.n.11; *cf.* Dkt.38. *Beckwith* rejects these arguments, applying logic that lands with even greater force to New Mexico's seven-day cooling-off period.

      Observing that *Bruen* "did not … draw the obviously silly conclusion" that a concealed-carry licensing scheme dodges constitutional scrutiny because the Second Amendment says nothing about concealed carry, *Beckwith* follows the Supreme Court's lead in looking to "whether the conduct proscribed by a law falls within the plain text of the Second Amendment." Ex.7.n.4. With cooling-off periods, the answer is easy: "If a citizen cannot take possession of a firearm then his or her right to possess a firearm or to carry it away is indeed curtailed, even if … the curtailment is modest." Ex.6. *Beckwith* also explains why cooling-off periods are not conditions or qualifications on sales: Unlike "background checks, age restrictions, shop security measures, and the like," cooling-off periods are "a standardless, temporary disarmament measure." Ex.8; *see also* Ex.15.

      As for history, "[t]he hows and whys of background checks and drunken-carry laws" are distinct, as both "entail individual inquiries and consequences." Ex.13. And even "abjectly prejudicial" historical laws "bann[ing] certain minorities from owning firearms" were at least "motivated by" fears about "certain persons." Ex.13-14.n.11. Conversely, cooling-off periods "entail generalized assumptions and global consequences"

706 Duke Street • Alexandria, VA 22314
202.742.8900 • www.clementmurphy.com

Mr. Christopher M. Wolpert, Clerk of Court
February 17, 2025
Page 2 of 2

for *everyone* who wants to exercise their Second Amendment rights. Ex.13. "Such an indiscriminate" approach "is not characteristic of our Nation's regulatory tradition," Ex.13, or of the Second Amendment itself, Ex.15.

        Respectfully submitted,

        <u>s/Erin E. Murphy</u>
        Erin E. Murphy
        CLEMENT & MURPHY PLLC
        706 Duke Street
        Alexandria, VA 22314
        (202) 742-8900
        erin.murphy@clementmurphy.com

Cc: All counsel of record (*via CM/ECF*)