24-2121

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

SAMUEL ORTEGA and
REBECCA SCOTT,

    Plaintiffs - Appellants,

v.

MICHELLE LUJAN GRISHAM, in her official capacity as Governor of the State of New Mexico, and RAUL TORREZ, in his official capacity as Attorney General of the State of New Mexico,

    Defendants - Appellees.

On Appeal from the United States District Court, District of New Mexico
The Honorable Phillip A. Brimmer
Chief District Judge

District Court Case No. 1:24-CV-00471-JB-SCY

**BRIEF OF *AMICUS CURIAE* STATE OF COLORADO IN SUPPORT OF APPELLEES' PETITION FOR REHEARING *EN BANC***

PHILIP J. WEISER
Attorney General
SHANNON WELLS STEVENSON*
Solicitor General
JOSEPH G. MICHAELS*
EMILY BURKE BUCKLEY*
PETER G. BAUMANN*
Assistant Solicitors General

Colorado Department of Law
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: 720-508-6152
E-Mail: shannon.stevenson@coag.gov
         emily.buckley@coag.gov;
         joseph.michaels@coag.gov;
         peter.baumann@coag.gov
*Counsel of Record
*Attorneys for State of Colorado*

## 26.1 DISCLOSURE STATEMENT

Because amicus State of Colorado is a government entity, no corporate disclosure statement is required under Federal Rule of Appellate Procedure 26.1.

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ................................................................... v

INTEREST OF AMICUS CURIAE ........................................................................ 1

SUMMARY OF THE ARGUMENT ..................................................................... 3

ARGUMENT .......................................................................................................... 4

    I.      The Court should grant the Petition for Rehearing *en banc* to resolve the uncertainty the *Ortega* Majority has inflicted on *RMGO*. .......................... 4

    II.     The Court should grant the Petition for Rehearing *en banc* because the divided panel's decision improperly expands the scope of the Second Amendment. ..................................................................................................... 7

CONCLUSION ..................................................................................................... 11

# TABLE OF AUTHORITIES

**PAGES**

**CASES**

*B&L Prods., Inc. v. Newsom*,
   104 F.4th 108 (9th Cir. 2024) .................................................................. 8, 10

*Barker v. Wingo*,
   407 U.S. 514 (1972) ................................................................................... 10

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980) ..................................................................................... 9

*Dist. of Columbia v. Heller*,
   554 U.S. 570 (2008) ..................................................................................... 3

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ..................................................................................... 7

*McRorey v. Garland*,
   99 F.4th 831 (5th Cir. 2024) ................................................................... 8, 10

*Md. Shall Issue, Inc. v. Moore*,
   116 F.4th 211 (4th Cir. 2024) ..................................................................... 7, 8

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   597 U.S. 1 (2022) ......................................................................... 4, 8, 10, 11

*Ohio Democratic Party v. Husted*,
   834 F.3d 620 (6th Cir. 2016) ....................................................................... 10

*Ortega v. Lujan Grisham*,
   2025 WL 2394646 (10th Cir. Aug. 19, 2025) ............................ 2, 3, 4, 5, 6, 11

*Rocky Mountain Gun Owners v. Polis*,
   701 F. Supp. 3d 1121 (D. Colo. 2023) ......................................................... 1, 2

*Rocky Mountain Gun Owners v. Polis*,
   121 F.4th 96 (10th Cir. 2024) ......................................................... 2, 3, 4, 5, 6, 10

*Silvester v. Harris*,
   843 F.3d 816 (9th Cir. 2016) ........................................................................ 10

*Thomas v. Chicago Park Dist.*,
  534 U.S. 316 (2002) ...........................................................................................9

*United States v. Morgan*,
  2025 WL 2502968 (10th Cir. Sept. 2, 2025) ......................................................5

*United States v. Rahimi*,
  602 U.S. 680 (2024) ............................................................................... 3, 7, 11

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ...........................................................................................9

**STATUTES**

2023 Colo. Sess. Laws, 74th Gen. Assemb., 1st Reg. Sess., Ch. 125 ........................1

52 U.S.C. § 20501 ........................................................................................................9

52 U.S.C. § 20503 ........................................................................................................9

**CONSTITUTION**

U.S. Const. amend. I ..................................................................................................9

U.S. Const. amend. II .......................................................................... 1, 3, 4, 7, 8, 10, 11

U.S. Const. amend. VI .............................................................................................10

**OTHER AUTHORITIES**

Luca, Malhotra & Poliquin, *Handgun Waiting Periods Reduce Gun Deaths*, 114
  Proc. Nat'l Acad. Sci. 12162 (Nov. 2017) ........................................................3

## STATEMENT OF RELATED CASES

- *Rocky Mountain Gun Owners and Garcia v. Polis*, Case No. 1:23-cv-02563-JLK (D. Colo. filed Oct, 1, 2023).

- *Garcia v. Polis*, 701 F. Supp. 3d 1121, 1131 (D. Colo. 2023), *appeal dismissed*, No. 23-1380, 2024 WL 5010820 (10th Cir. Aug. 23, 2024).

## INTEREST OF AMICUS CURIAE

The State of Colorado has a compelling interest in public safety and crime prevention, including firearm homicide and suicide reduction. It also has an interest in identifiable constitutional standards for permissible firearm regulations. Like over a dozen States, Colorado requires a waiting period between the purchase and delivery of commercially sold firearms. Recognizing that "firearm-related injury was among the five leading causes of death for people ages 1 to 44," Colorado's legislature exercised its police power to enact a waiting period law to protect the public health, safety, and welfare of Coloradoans. 2023 Colo. Sess. Laws, 74th Gen. Assemb., 1st Reg. Sess., Ch. 125, § 1(1)(a) (Ex. 2, attached). Colorado's law recognizes that a cooling-off period dramatically reduces homicide and suicide firearm deaths. *Id*. at §§ 1(1)(f), 1(2)(a)-(b).

Like New Mexico's seven-day waiting period law, Colorado's three-day Waiting Period Law was challenged as unconstitutional. *Rocky Mountain Gun Owners & Garcia v. Polis*, 701 F. Supp. 3d 1121, 1124-28 (D. Colo. 2023), *appeal dismissed*, No. 23-1380, 2024 WL 5010820 (10th Cir. Aug. 23, 2024). In November 2023, the district court denied a request to enjoin Colorado's law, holding the "plain text of the Second Amendment does not cover the conduct at issue" and the law is a presumptively lawful regulation on the commercial sale of

1

firearms. *Id.* at 1135. After fully briefing cross-motions for summary judgment, that decision is pending. The analysis in the *Ortega* Majority Opinion directly affects the issues before the Court in that challenge.

Moreover, just last year a panel of this Court upheld Colorado's law raising the minimum age to purchase firearms from 18 to 21. *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 104 (10th Cir. 2024) ("*RMGO*"). Colorado's Minimum Age Law remains in effect today, reducing the impact of gun violence on underage Coloradans. *See id.* at 126-27 (reiterating "unrefuted" declaration that the law "'will likely reduce the numbers of firearm homicides, nonhomicide violent crimes, suicides, and accidental firearm injuries in Colorado'") (internal citation omitted).

Although the *Ortega* Majority attempts to distinguish *RMGO*, its efforts "are not persuasive." *Ortega v. Lujan Grisham*, -- F.4th --, 2025 WL 2394646, at *18 (10th Cir. Aug. 19, 2025) (Matheson, J., dissenting). By failing to faithfully apply *RMGO*, the Majority not only cast doubt on the constitutionality of Colorado's Waiting Period Law, but also undermined *RMGO*'s framework. Unless resolved by the *en banc* Court, courts and litigants within the Tenth Circuit, like Colorado, will be faced with the Sisyphean task of reconciling two inapposite legal frameworks.

For these reasons, Colorado has an interest in this Court granting New Mexico's Petition for Rehearing *en banc*, clarifying the disconnect between the *Ortega* Majority and *RMGO*, and creating certainty within the Circuit.

## SUMMARY OF THE ARGUMENT

"Waiting periods cause large and statistically significant reductions in homicides," an up-to-17% reduction. Luca, Malhotra & Poliquin, *Handgun Waiting Periods Reduce Gun Deaths*, 114 Proc. Nat'l Acad. Sci. 12162, 12162 (Nov. 2017). The then-17 states with waiting periods avoid approximately 750 gun homicides per year. *Id.* at 12164. They also yield a 7-11% reduction in gun suicides. *Id.* at 12163. Indeed, the evidence before the Court in the ongoing challenge to Colorado's Waiting Period Law, confirms the three-day waiting period saves the lives of an estimated 100 Coloradans per year. *See* Report of C. Poliquin, ¶¶ 11, 16 (Exhibit 1, attached).

Waiting periods, which do not prevent gun possession, are entirely consistent with the Supreme Court's pronouncement that "'the right secured by the Second Amendment is not unlimited.'" *United States v. Rahimi*, 602 U.S. 680, 690 (2024) (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). This Court should grant rehearing *en banc* because the divided panel opinion fails to faithfully

apply *RMGO*, and the decision expands the scope of the Second Amendment beyond *Bruen* and *Rahimi*.

## ARGUMENT

**I.   The Court should grant the Petition for Rehearing *en banc* to resolve the uncertainty the *Ortega* Majority has inflicted on *RMGO*.**

In *RMGO*, a unanimous panel of this Court held that Colorado's Minimum Age Law was a constitutional exercise of the state's police power. Relevant here, *RMGO* held that "laws imposing conditions and qualifications on the sale and purchase of arms do not implicate the plain text of the Second Amendment," and are thus suitable for resolution at the first stage of the *Bruen* test. *RMGO*, 121 F.4th at 119-120; *see also N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022) (establishing a two-stage inquiry under the Second Amendment).

The *Ortega* Majority deviated from that holding. Over a well-reasoned dissent that would have followed the law of the Circuit, the *Ortega* Majority held that its decision "accords with *RMGO*" because *RMGO* did not establish "what defines a condition or qualification on a commercial sale." 2025 WL 2394646, at *9-*10. It went on to rule that New Mexico's Waiting Period Law is "not a condition because it cannot be met by any action, and it is not a qualification because it is universally applicable." *Id.* at *9.

4

But the same logic applies to Colorado's Minimum Age Law, the constitutionality of which was upheld in *RMGO*. Under that law, the restriction on purchase "cannot be met by any action" for those under the age of 21, and is "universally applicable" to that same universe. By ignoring these facts, the *Ortega* Majority circumvented and significantly narrowed *RMGO*'s core holding.

And contrary to the *Ortega* Majority's view, *RMGO did* define the contours of presumptively lawful regulations imposing conditions and qualifications on the commercial sale of arms: laws that regulate "selling and purchasing firearms." 121 F.4th at 120. Under *RMGO*, a law that regulates "the selling and purchasing of firearms," like a Waiting Period Law, is presumptively lawful. *See Ortega*, 2025 WL 2394646, at *17 (Matheson, J., dissenting); *see also United States v. Morgan*, -- F.4th --, 2025 WL 2502968 at *3 (10th Cir. Sept. 2, 2025) (interpreting *RMGO* to hold that "commercial restrictions," i.e., laws that regulate the "selling and purchasing of firearms," are "presumptively lawful").

That is not to say all commercial regulations related to firearms are constitutional. Such regulations can be "put towards abusive ends." *RMGO*, 121 F.4th at 122 (internal citation and quotation omitted). Where they are, the presumption of constitutionality is overcome. *Id.* But the *Ortega* Majority elided that discussion entirely by ignoring *RMGO*'s holding as to presumptive lawfulness

5

and wrongly broadening "abusiveness" into a categorical disqualification, instead of based on the extent of a discrete regulation.

After *RMGO*, *Ortega*'s result should have been easy. Colorado's Minimum Age Law requires persons to wait until they turn 21 years old to purchase a firearm; New Mexico's Waiting Period Law requires all persons to wait seven days before delivery of a firearm. Colorado's Minimum Age Law applies only to commercial transactions and imposes no restrictions on the keeping or carrying of firearms by persons under the age of 21; New Mexico's Waiting Period Law operates the same way. Colorado's Minimum Age Law includes a carve-out for sales to law enforcement officials; so does New Mexico's Waiting Period Law.

But despite these similarities, *Ortega* came out differently. The result not only upends the *RMGO* decision on which Colorado relies, it creates a mess for courts and litigants throughout the Circuit. After *RMGO*, both the government and the community knew, with certainty, that regulations governing the commercial sale of firearms were presumptively lawful. Now, those same parties must attempt to divine whatever minute differences exist—if any—between Colorado's Minimum Age Law and New Mexico's Waiting Period Law.

This Court should grant rehearing *en banc* to resolve the conflict with *RMGO* and provide much-needed clarity in this critical area.

## II. The Court should grant the Petition for Rehearing *en banc* because the divided panel's decision improperly expands the scope of the Second Amendment.

Waiting period laws do not implicate the plain text of the Second Amendment and are proper conditions on and regulation of the sale of firearms.

The Second Amendment is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Rahimi*, 602 U.S. at 691 (internal quotation omitted). Consequently, "reasonable firearms regulations" can coexist comfortably with the Second Amendment, giving States latitude to enact regulations to address "solutions to social problems that suit local needs and values." *McDonald v. City of Chicago*, 561 U.S. 742, 767, 785 (2010). Waiting period laws that address the problem of impulsive gun violence are just such appropriate regulations.

At *Bruen*'s first step, a regulation "falls within the ambit of the Second Amendment only if the regulation 'infringes' the Second Amendment right to keep and bear arms." *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 220 (4th Cir. 2024) (*en banc*), *cert. denied* 145 S. Ct. 1049 (Jan. 13, 2025). But the "plain text of the Second Amendment only prohibits *meaningful* constraints on the right to acquire firearms," and commercial regulations that "do not 'meaningfully constrain' any individual's ability to keep and bear arms … do not implicate the plain text[.]"

7

*B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 110, 118 (9th Cir. 2024) (emphasis added, citation omitted), *cert. denied*, 145 S. Ct. 1958 (Apr. 28, 2025). Unlike the laws challenged in *Heller*, *McDonald*, *Bruen*, and *Rahimi*, all of which *precluded* individuals from possessing guns, waiting period laws do not make *possession*, *carrying*, *keeping*, or *bearing* arms illegal; do not deprive anyone of guns; and do not limit the number of guns a person can possess. Rather, they only impose minimal delays on delivery of a new gun.

*En banc* review is also warranted because the *Ortega* Majority treated wait times as per se unconstitutional. But *Bruen* itself confirmed that licensing regimes are constitutional absent evidence that "*lengthy* wait times" were put to abusive ends to "deny ordinary citizens their right to public carry." 597 U.S. at 38 n.9 (emphasis added). Waiting period laws are not abusive "de facto prohibition[s]," *McRorey v. Garland*, 99 F.4th 831, 840 (5th Cir. 2024) (10-day waiting period not abusive), or even a "meaningful constraint[]," *B&L Prods., Inc.*, 104 F.4th at 118. They are not even an "infringe[ment]" on the right to keep and bear arms. *Md. Shall Issue, Inc.*, 116 F.4th at 222 & 227 n.15 (rejecting argument that two-week delay in taking possession was "so lengthy as to deny individuals their Second Amendment rights"). Thus, the question is not, as the *Ortega* Majority held, whether a regulation categorically delays access, but whether it impermissibly

8

imposes a *lengthy* wait time that becomes abusive. This requires considering the length of the wait time and whether a discrete waiting period law is abusive—not sweepingly disallowing all waiting periods as abusive. *En banc* review is necessary to correct this distinction.

The *Ortega* Majority could be interpreted to conclude that *no waiting periods* are permissible because other constitutional rights do not tolerate waiting periods. But this is inaccurate:

- The First Amendment is subject to well-established time, place, and manner restrictions on when, where, and how to speak. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). And states may, through permit requirements, impose waiting periods on group protest activity. *E.g.*, *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322-24 (2002) (upholding requirement that gatherings of over 50 people in Chicago parks obtain a permit, which takes up to 28 days to issue).[1]

- The "fundamental right" to vote, 52 U.S.C. § 20501(a)(1), requires registering before one can exercise that right, *see* 52 U.S.C. §§ 20503, et

---

[1] Because gun sales are subject to government regulation, there is reason to allow for differences in treatment, including delays in acquisition. *Cf. Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562 (1980) (recognizing different standards apply to commercial speech under the First Amendment because it is "traditionally subject to government regulation").

9

seq., and courts have upheld a waiting period between when a person registers and when that person may cast their vote, *see, e.g.*, *Ohio Democratic Party v. Husted*, 834 F.3d 620, 630 (6th Cir. 2016).

- The Sixth Amendment right to a speedy trial provides that criminal defendants—who face deprivation of liberty and property—are not entitled to *immediate* trial, but rather can be detained within reasonable constitutional limits. *See Barker v. Wingo*, 407 U.S. 514, 530-33 (1972).

Further, while the Second Amendment's plain text right to "keep and bear" arms may "implicate the right to purchase[,] … such an implication is not the same thing as being covered by the plain text of the amendment." *McRorey*, 99 F.4th at 838. By definition, a right *implied* is not written in plain text. *Id.*; *accord Bruen*, 597 U.S. at 24 (question is whether "Second Amendment's plain text covers an individual's conduct"); *B&L Prods., Inc.*, 104 F.4th at 117 ("['keep and bear'] says nothing about commerce"), *cited with approval in RMGO*, 121 F.4th at 117-18.

Even assuming an implied right of possession, the plain text provides no right—implied or otherwise—to *immediate* possession. *Cf. McRorey*, 99 F.4th at 838-39 (10-day waiting period did not amount to prohibition on possession). Gun purchasers in colonial times routinely had to wait to take possession of a firearm; indeed, they expected it. *See Silvester v. Harris*, 843 F.3d 816, 827 (9th Cir. 2016)

(There is "nothing new in having to wait for the delivery of a weapon," and "18th and 19th forebears … [*faced d*]*elays of a week or more*[, which] were not the product of governmental regulations, but such delays had to be routinely accepted.") (emphasis added). So, at colonial times, people neither understood nor expected the Second Amendment to provide a right of immediate possession. *En banc* rehearing is critical to correct the *Ortega* Majority's fundamental misunderstanding of this baseline point. It is likewise necessary to redress the distinction between a plain text right and an implied right, which, by definition, is not of the plain text.

Finally, at *Bruen*'s second step, the *Ortega* Majority failed to heed the Supreme Court's caution of not needing a historical twin when, finding none, it in essence declared all waiting period laws unconstitutional. *See Rahimi*, 602 U.S. at 691-92; *see also id.* at 740 (Barrett, J., concurring) ("[h]istorical regulations reveal a principle, not a mold"). This rigid approach is inconsistent with *Bruen* and paralyzes States' ability to stem the rising tide of gun violence and suicide.

## CONCLUSION

This Court should review the panel decision *en banc*.

Respectfully submitted,

PHILIP J. WEISER
Attorney General

s/ Joseph G. Michaels
*Shannon Wells Stevenson*, Solicitor General\*
*Joseph G. Michaels*, Assistant Solicitor General\*
*Emily Burke Buckley*, Assistant Solicitor General\*
*Peter G. Baumann*, Assistant Solicitor General\*
Colorado Department of Law
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: shannon.stevenson@coag.gov;
joseph.michaels@coag.gov;
emily.buckley@coag.gov;
peter.baumann@coag.gov
*Attorneys for the State of Colorado*
\*Counsel of Record

# Word Count and Typeface

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4)-(5), and 40(b) because

> this motion contains 2,404 words (2,600 words or less).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

> this brief has been prepared in a proportionally spaced typeface (fourteen-point Times New Roman) using Microsoft Word.

Date: September 8, 2025.

> *s/ Joseph G. Michaels*
> Assistant Solicitor General